RANDY S. GROSSMAN
United States Attorney
MICHAEL A. DESHONG
California Bar No. 301041
ROBERT J. MILLER
Pennsylvania Bar No. 309258
Assistant U.S. Attorneys
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-8403

Attorneys for Plaintiff
United States of America

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ROBERTO SALAZAR II (1),<br><br>　　　　Defendant. | Case No. 22-cr-216-JLS-1<br><br>PLEA AGREEMENT |

　　IT IS HEREBY AGREED between the plaintiff, UNITED STATES OF AMERICA, through its counsel, Randy S. Grossman, United States Attorney, and Michael A. Deshong and Robert J. Miller, Assistant United States Attorneys, and defendant, ROBERTO SALAZAR II, with the advice and consent of Andrew K. Nietor, counsel for defendant, as follows:

//
//
//
//
//
//
//

RJMI:8/22/22

Def. Initials ꝑS

# I

# THE PLEA

A.  The Charges.

Defendant agrees to plead guilty to Counts 1 and 2 of a four-count Superseding Indictment charging defendant as follows:

## Count 1

Beginning on a date unknown to the grand jury, but at least as early as April 2016, and continuing up to and including February 2, 2022, within the Southern District of California and elsewhere, defendants ROBERTO SALAZAR II, JOSE ERNESTO LOPEZ, and JUAN CARLOS ZEPEDA-SANTOS, did knowingly and intentionally conspire together and with each other and with other persons known and unknown to the grand jury, to distribute 1 kilogram and more of a mixture and substance containing a detectable amount of heroin, a Schedule I Controlled Substance; 50 grams and more of methamphetamine (actual), a Schedule II Controlled Substance; 5 kilograms and more of a mixture and substance containing a detectable amount of cocaine, a Schedule II Controlled Substance; and 400 grams and more of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (commonly known as fentanyl), a Schedule II Controlled Substance; all in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A), and 846.

## Count 2

On or about September 12, 2021, within the Southern District of California, defendant ROBERTO SALAZAR II, did knowingly and intentionally import 400 grams and more of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (commonly known as fentanyl), a Schedule II Controlled Substance; in violation of Title 21, United States Code, Sections 952 and 960, and Title 18, United States Code, Section 2.

B.  Preservation of Evidence.

Defendant agrees further that, following entry of defendant's guilty plea, the Government need not hold or preserve any evidence seized in connection with this case. With respect to any controlled substance seized in connection with this case, defendant agrees that, following entry of defendant's guilty plea, the Government need not preserve, and

may destroy, the controlled substance thirty (30) days after the Government has provided defendant with the laboratory analysis report. If defendant believes that additional testing is needed, defendant will arrange for, and complete, such testing within the above-referenced thirty (30) day period, unless that period is extended by joint written agreement between the parties or by order of the Court, in which case the Government shall preserve the controlled substance for the agreed-upon or judicially mandated period. Furthermore, if the court has issued a preservation order in connection with any seized evidence, the defendant agrees to jointly request that the Court lift or revoke the preservation order following entry of defendant's guilty plea.

C. <u>Forfeiture</u>.

Defendant further agrees to forfeiture of all properties seized in connection with this case. The forfeiture is more fully described in Section X below.

## II

### NATURE OF THE OFFENSE

A. <u>ELEMENTS EXPLAINED</u>

The offenses to which defendant is pleading guilty have the following elements:

<u>Count 1</u>

1. Beginning on a date unknown, but at least as early as April 2016, and ending on or about February 2, 2022, there was an agreement between two or more persons to distribute heroin, methamphetamine, cocaine, and N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (fentanyl); and

2. Defendant became a member of the conspiracy knowing of its purpose to distribute heroin, methamphetamine, cocaine and N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (fentanyl), and intending to help accomplish that purpose.

In addition, for the purposes of sentencing, the Government would have to prove beyond a reasonable doubt, that: (1) the amount of heroin involved in the offense was at least one kilogram of a mixture or substance containing a detectable amount of heroin; (2) the amount of methamphetamine involved in the offense was at least 50 grams of methamphetamine (actual); (3) the amount of cocaine involved in the offense was at least five kilograms of a mixture or substance containing a detectable amount of cocaine; and (4) the amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (fentanyl) was at least 400 grams of a mixture and substance containing a detectable amount of fentanyl, and these types of drugs and amounts were reasonably foreseeable to Defendant.

Count 2

1. Someone else committed the crime of importation of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (fentanyl), in violation of Title 21, United States Code, Sections 952 and 960;

2. Defendant aided, counseled, commanded, induced or procured that person with respect to at least one element of importation of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (fentanyl);

3. Defendant acted with the intent to facilitate the importation of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (fentanyl); and

2. Defendant acted before the crime was completed.

In addition, for purposes of sentencing, the Government would have to prove, beyond a reasonable doubt, that the amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (fentanyl) involved in the offense was at least 400 grams of a mixture or substance containing a detectable amount fentanyl.

//
//

B. ELEMENTS UNDERSTOOD AND ADMITTED – FACTUAL BASIS

Defendant has fully discussed the facts of this case with defense counsel. Defendant has committed each element of the crime, and admits that there is a factual basis for this guilty plea. The following facts are true and undisputed:

1. Beginning on a date unknown, but at least as early as April 2016, and continuing up to and including February 2, 2022, within the Southern District of California and elsewhere, an agreement existed between at least two people to distribute heroin, methamphetamine, cocaine, and N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (fentanyl).

2. Defendant ROBERTO SALAZAR II joined this agreement knowing that its purpose was to distribute heroin, methamphetamine, cocaine, and N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (fentanyl), and he intended to help accomplish the agreement's unlawful purpose.

3. For example, in furtherance of the conspiracy:

    a. In 2015, Defendant recruited a classmate, S.I., at Southwestern Community College in Chula Vista, California, to smuggle controlled substances into the United States from Mexico in a vehicle. Defendant and his father, R.S.M., instructed S.I. to import multiple shipments of controlled substances into the United States and deliver them to locations in the United States, including Long Beach and Riverside. Defendant paid S.I. $2,000 for each load of controlled substances he successfully smuggled into the United States from Mexico.

    b. On or about April 6, 2016, S.I., at the direction of Defendant and his father, drove his vehicle into the United States from Mexico through the San Ysidro, California, Port of Entry. At the time, concealed within S.I.'s vehicle was approximately 2.4 kilograms (5.29 pounds) of cocaine and 9.34 kilograms (20.59 pounds) of methamphetamine. Defendant knew the vehicle driven by S.I. contained controlled substances and had arranged for S.I. to pick up these controlled substances in Mexico and transport them to co-conspirators in the Los Angeles.

    c. In or around 2016, Defendant's father was deported to Mexico and Defendant joined the United States Marine Corps. Thereafter, Defendant continued to participate in drug-trafficking activities, including recruiting, managing, and paying multiple drug couriers. After

5

Def. Initials RS
Case No. 22-cr-216-JLS-1

          recruiting these couriers, Defendant directed them to travel to a specific mechanic shop in Mexico (the "Mechanic Shop") to pick up vehicles within which controlled substances were concealed, and to then drive the cars into the United States from Mexico and transport them to the Los Angeles area and/or Nevada. Defendant also personally drove vehicles to Mexico and delivered them to the Mechanic Shop so the vehicles could later be used to import controlled substances into the United States.

    d.    Defendant communicated and coordinated with co-defendants Jose Ernesto LOPEZ, Juan Carlos ZEPEDA Santos, and others, in furtherance of the conspiracy's unlawful objective, using encrypted messaging applications such as WhatsApp and Signal to conceal the group's activities and evade detection by law enforcement. Defendant also used electronic payment applications such as CashApp to facilitate the payment of his co-conspirators and drug couriers from the proceeds of drug-trafficking.

    e.    Between January and April 2021, Defendant recruited and directed an individual, a former United States Marine Corps member, to import controlled substances into the United States in the manner described above utilizing a blue 2005 BMW 525i sedan (CA/8TUH709) (the "Blue BMW"). At the direction of Defendant, this former U.S. Marine successfully smuggled controlled substances into the United States on approximately five occasions. Defendant paid this individual approximately $2,000 for each successful smuggling event.

    f.    On April 23, 2021, Defendant drove the Blue BMW south into Mexico and delivered the car to the Mechanic Shop aware that, thereafter, it would likely be used to smuggle controlled substances back into the United States. On October 3, 2021, the Blue BMW (replated as CA/8YFU856) was seized at the San Ysidro, California, Port of Entry with 7.7 kilograms (16.97 pounds) of cocaine concealed within the engine compartment of the vehicle. The driver of the vehicle, A.U., who was arrested and charged with importation of cocaine, was recruited by co-defendant Jose Ernesto LOPEZ and had already completed several successful smuggling events in the Blue BMW in furtherance of the conspiracy's unlawful purpose.

    g.    On or about September 5, 2021, Defendant recruited another individual, J.R., also a former United States Marine Corps member, to import controlled substances into and within the United States in the manner described above utilizing a white 2003 BMW 745 LI (CA/8VDN495) (the "White BMW"). At the direction of Defendant, J.R. completed multiple successful drug

        importation and transportation events, both into the United States from Mexico and within the United States.

    h. On September 12, 2021, J.R. was arrested at the San Ysidro, California, Port of Entry and law enforcement found 6.6 kilograms (14.55 pounds) of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (fentanyl) concealed within the engine compartment of the White BMW. Prior to J.R.'s arrest, Defendant had directed J.R. to deliver the White BMW to the Mechanic Shop in Mexico and knew that drugs would be concealed inside the vehicle while it was there. Defendant then directed J.R. to retrieve the White BMW from the Mechanic Shop and drive it into the United States knowing that drugs had been concealed inside it. If the drugs had successfully been imported into the United States, Defendant intended to direct J.R. to deliver the drugs to co-conspirators inside the United States.

    i. On or about November 2021 and January 19, 2022, Defendant personally distributed multiple kilograms of heroin to a purchaser in Las Vegas, Nevada. On January 19, 2022, Defendant and an unidentified co-conspirator transported approximately 1.0 kilogram of heroin through the Southern District of California to this purchaser in Las Vegas, Nevada in Defendant's silver Jeep Gladiator (CA/72642D3). Defendant coordinated the attempted delivery of the heroin with the purchaser and instructed his co-conspirator to deliver the heroin inside a grocery store. Prior to delivering the heroin, Defendant's co-conspirator abandoned the heroin on a shelf in the grocery store and fled from law enforcement.

4. Defendant SALAZAR's agreement with others to distribute controlled substances involved at least one kilogram of a mixture or substance containing a detectable amount of heroin, at least 50 grams of methamphetamine (actual), at least five kilograms of a mixture or substance containing a detectable amount of cocaine, and at least 400 grams of a mixture and a substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (fentanyl), and these types and quantities fell within the scope of Defendant's agreement with his co-conspirators and were reasonably foreseeable to Defendant.

### III
### **PENALTIES**

The crimes to which defendant is pleading guilty carry the following penalties:

#### Counts 1 and 2

A.  a maximum of life in prison; and a mandatory minimum of 10 years;

B.  a maximum $10,000,000 fine;

C.  a mandatory special assessment of $100.00 per count;

D.  a term of supervised release of at least 5 years and up to life. Defendant understands that failure to comply with any of the conditions of supervised release may result in revocation of supervised release, requiring defendant to serve in prison, upon any such revocation, all or part of the statutory maximum term of supervised release for the offense that resulted in such term of supervised release; and

E.  possible ineligibility for certain Federal benefits.

### IV
### **DEFENDANT'S WAIVER OF TRIAL RIGHTS AND UNDERSTANDING OF CONSEQUENCES**

This guilty plea waives defendant's right at trial to:

A.  Continue to plead not guilty and require the Government to prove the elements of the crime beyond a reasonable doubt

B.  A speedy and public trial by jury;

C.  The assistance of counsel at all stages of trial;

D.  Confront and cross-examine adverse witnesses;

E.  Testify and present evidence and to have witnesses testify on behalf of defendant; and

F.  Not testify or have any adverse inferences drawn from the failure to testify.

### V
### **DEFENDANT ACKNOWLEDGES NO PRETRIAL RIGHT TO BE PROVIDED WITH IMPEACHMENT AND AFFIRMATIVE DEFENSE INFORMATION**

Any information establishing the factual innocence of Defendant known to the undersigned prosecutor in this case has been turned over

to Defendant. The Government will continue to provide such information establishing the factual innocence of defendant.

If this case proceeded to trial, the Government would be required to provide impeachment information for its witnesses. In addition, if Defendant raised an affirmative defense, the Government would be required to provide information in its possession that supports such a defense. By pleading guilty, defendant will not be provided this information, if any, and defendant waives any right to this information. Defendant will not attempt to withdraw the guilty plea or file a collateral attack on the existence of this information.

## VI

### DEFENDANT'S REPRESENTATION THAT GUILTY PLEA IS KNOWING AND VOLUNTARY

Defendant represents that:

A. Defendant has had a full opportunity to discuss all the facts and circumstances of this case with defense counsel and has a clear understanding of the charges and the consequences of this plea. By pleading guilty, Defendant may be giving up, and rendered ineligible to receive, valuable government benefits and civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. The conviction in this case may subject Defendant to various collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case; debarment from government contracting; and suspension or revocation of a professional license, none of which can serve as grounds to withdraw Defendant's guilty plea;

B. No one has made any promises or offered any rewards in return for this guilty plea, other than those contained in this agreement or otherwise disclosed to the court;

C. No one has threatened Defendant or Defendant's family to induce this guilty plea; and

D. Defendant is pleading guilty because Defendant is guilty and for no other reason.

9                     Def. Initials  RS
                      Case No. 22-cr-216-JLS-1

## VII

### AGREEMENT LIMITED TO U.S. ATTORNEY'S OFFICE SOUTHERN DISTRICT OF CALIFORNIA

This plea agreement is limited to the United States Attorney's Office for the Southern District of California, and cannot bind any other authorities in any type of matter, although the Government will bring this plea agreement to the attention of other authorities if requested by Defendant.

## VIII

### APPLICABILITY OF SENTENCING GUIDELINES

The sentence imposed will be based on the factors set forth in 18 U.S.C. § 3553(a). In imposing the sentence, the sentencing judge must consult the United States Sentencing Guidelines (Guidelines) and take them into account. Defendant has discussed the Guidelines with defense counsel and understands that the Guidelines are only advisory, not mandatory. The Court may impose a sentence more severe or less severe than otherwise applicable under the Guidelines, up to the maximum in the statute of conviction. The sentence cannot be determined until a presentence report is prepared by the U.S. Probation Office and defense counsel and the Government have an opportunity to review and challenge the presentence report. **Defendant agrees to request that a presentence report be prepared.** Nothing in this plea agreement limits the Government's duty to provide complete and accurate facts to the district court and the U.S. Probation Office.

## IX

### SENTENCE IS WITHIN SOLE DISCRETION OF JUDGE

This plea agreement is made pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B). The sentence is within the sole discretion of the sentencing judge who may impose the maximum sentence provided by

10

Def. Initials RS
Case No. 22-cr-216-JLS-1

statute. It is uncertain at this time what Defendant's sentence will be. The Government has not made and will not make any representation as to what sentence Defendant will receive. Any estimate of the probable sentence by defense counsel is not a promise and is **not binding on the Court**. Any recommendation made by the Government at sentencing is also not binding on the Court. If the sentencing judge does not follow any of the parties' sentencing recommendations, Defendant will not withdraw the plea.

X

**PARTIES' SENTENCING RECOMMENDATIONS**

A. SENTENCING GUIDELINE CALCULATIONS

Although the parties understand that the Guidelines are only advisory and just one of the factors the court will consider under 18 U.S.C. § 3553(a) in imposing a sentence, the parties will jointly recommend the following Base Offense Level, Specific Offense Characteristics, Adjustments and Departures (if applicable), based on the November 1, 2021 guidelines:

| | | | |
|---|---|---|---|
| 1. | Base Offense Level [USSG § 2D1.1] | | $38^{1}$* |
| 2. | Importation of Methamphetamine [USSG § 2D1.1(b)(5)] (If Defendant is not subject to an adjustment for mitigating role) | | +2 |
| 3. | Aggravating Role Enhancement [USSG § 2D1.1(b)(16)(C)] | | +2** |
| 4. | Safety Valve (if applicable) [§§ 2D1.1(b)(18) and 5C1.2] | | N/A*** |

---

[1] Reflecting the conversion of the preliminary weights of 8.796 kilograms of methamphetamine (actual) and 1.987 kilograms of cocaine (April 6, 2016 event); 6.6 kilograms of fentanyl (September 12, 2021 event); 7.7 kilograms (16.97 pounds) of cocaine (October 3, 2021 event); and 1.5 kilograms of heroin (January 19, 2022 event), resulting in a converted drug weight of 195,857 kilograms.

11

Def. Initials RS
Case No. 22-cr-216-JLS-1

|   |   |   |
|---|---|---|
| 5. | Aggravating Role [USSG § 3B1.1(b)] | +3*** |
| 6. | Acceptance of Responsibility [§ 3E1.1] | -3 |
| 7. | Combination of Circumstances [§ 5K2.0] | -2**** |

*The actual Base Offense Level (BOL) cannot be determined until a laboratory has performed a chemical analysis of a sample of all of the controlled substance(s), so this calculation is subject to change. At sentencing, the parties will recommend a BOL consistent with the results of the laboratory testing of the sample and the weight of the controlled substance(s) as determined at the time of defendant's arrest (after first incorporating a 10% reduction in the overall weight to reflect a reduction in the weight for packaging and other considerations). If defendant is determined to be a career offender pursuant to USSG § 4B1.1(a), the applicable base offense level shall be determined pursuant to USSG § 4B1.1(b). Furthermore, defendant will be ineligible for any role reduction.

**Defendant is free to argue regarding the applicability of the enhancements relating to his role in the offense and his eligibility for relief from the mandatory minimum.

***Defendant has been advised that the Government does not believe Defendant is eligible for a Safety Valve departure or relief from the mandatory minimum based on his aggravating role in managing and supervising multiple drug couriers in criminal activity that involved five or more participants or was otherwise extensive. USSG §§ 3B1.1 and 5C1.2(a)(4); 18 U.S.C. § 3553(f)(4).

****The Government reserves the right to reduce its recommended departure if defendant does not proceed to sentencing on the first date

set by the Court, unless the parties agree to a continuance or sentencing is continued on the Court's own motion.

B. ACCEPTANCE OF RESPONSIBILITY

Despite paragraph A above, the Government need not recommend an adjustment for Acceptance of Responsibility if Defendant engages in conduct inconsistent with acceptance of responsibility including, but not limited to, the following:

1. Fails to truthfully admit a complete factual basis as stated in the plea at the time the plea is entered, or falsely denies, or makes a statement inconsistent with, the factual basis set forth in this agreement;

2. Falsely denies prior criminal conduct or convictions;

3. Is untruthful with the Government, the Court or probation officer; or

4. Breaches this plea agreement in any way.

C. FURTHER ADJUSTMENTS AND SENTENCE REDUCTIONS INCLUDING THOSE UNDER 18 U.S.C. § 3553

Defendant **may** request or recommend additional downward adjustments, departures, or variances from the Sentencing Guidelines under 18 U.S.C. § 3553. The Government will oppose any downward adjustments, departures, or variances not set forth in Section X, paragraph A above.

D. NO AGREEMENT AS TO CRIMINAL HISTORY CATEGORY

The parties have **no** agreement as to Defendant's Criminal History Category, except that, if Defendant is determined to be a Career Offender, the parties agree that the Defendant is automatically a Criminal History Category VI pursuant to USSG § 4B1.1(b).

E. "FACTUAL BASIS" AND "RELEVANT CONDUCT" INFORMATION

The facts in the "factual basis" paragraph of this agreement are true and may be considered as "relevant conduct" under USSG § 1B1.3 and

as the nature and circumstances of the offense under 18 U.S.C. § 3553(a)(1).

F.  PARTIES' RECOMMENDATIONS REGARDING CUSTODY

The Government agrees to recommend the greater of a sentence within the advisory guideline range as calculated by the Government after incorporating a downward variance under 18 U.S.C. § 3553(a) that is the equivalent of three levels under the Sentencing Guidelines,[1] the statutory mandatory minimum sentence, if applicable, or the time served in custody at the time of sentencing.

G.  SPECIAL ASSESSMENT

The parties will jointly recommend that Defendant pay a special assessment in the amount of $100.00 per felony count of conviction to be paid forthwith at time of sentencing. The special assessment shall be paid through the Office of the Clerk of the District Court by bank or cashier's check or money order made payable to the "Clerk, United States District Court."

H.  SUPERVISED RELEASE

The Government is free to recommend a period of supervised release. If the Court imposes a term of supervised release, Defendant will not seek to reduce or terminate early the term of supervised release until Defendant has served at least two-thirds of the term of supervised release and has fully paid and satisfied any special assessments, fine, criminal forfeiture judgment and restitution judgment.

//
//

---

[1] This variance takes into account, among other factors, Defendant's age, lack of criminal history, his military service in the U.S. Marine Corps, and the need to avoid unwarranted sentencing disparities.

14   Def. Initials PS
Case No. 22-cr-216-JLS-1

I.   FORFEITURE

The Defendant agrees and consents to the forfeiture to the United States of all property seized in connection with this case. Defendant agrees all property(ies) are subject to forfeiture to the United States pursuant to Title 21, United States Code, Sections 853 and 881. Defendant consents and agrees to the immediate entry of order(s) of forfeiture as the Government deems necessary. Defendant agrees that upon execution of this plea agreement the Defendant's interest(s) in any and all seized properties is terminated.  Defendant waives all rights to receive notices of any and all forfeitures. Defendant agrees that by signing this plea agreement he/she is immediately withdrawing any claims in pending administrative or civil forfeiture proceedings to properties seized in connection with this case. Defendant agrees to execute all documents requested by the Government to facilitate or complete the forfeiture process(es). Defendant further agrees not to contest, or to assist any other person or entity in contesting, the forfeiture of property seized in connection with this case. Contesting or assisting others in contesting the forfeiture shall constitute a material breach of the plea agreement, relieving the Government of all its obligations under the agreement including but not limited to its agreement to recommend an adjustment for Acceptance of Responsibility.

Defendant further waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. Defendant understands that the forfeiture of assets is part of the sentence that may be imposed in this case and waives any failure by the Court to advise defendant of this, pursuant to Rule 11(b)(1)(J), at the time the Court

accepts the guilty plea(s). Defendant further agrees to waive all constitutional and statutory challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this agreement, including any claim that the forfeiture constitutes an excessive fine or punishment under the United States Constitution. Defendant agrees to take all steps as requested by the United States to pass clear title to forfeitable assets to the United States and to testify truthfully in any judicial forfeiture proceeding. Defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including any agreed money judgment amount, is collected in full.

## XI

### DEFENDANT WAIVES APPEAL AND COLLATERAL ATTACK

Defendant waives (gives up) all rights to appeal and to collaterally attack every aspect of the conviction and sentence. This waiver includes, but is not limited to, any argument that the statute of conviction or Defendant's prosecution is unconstitutional and any argument that the facts of this case do not constitute the crime charged. The only exception is defendant may collaterally attack the conviction or sentence on the basis that defendant received ineffective assistance of counsel.

## XII

## BREACH OF THE PLEA AGREEMENT

Defendant and Defendant's attorney know the terms of this agreement and shall raise, before the sentencing hearing is complete, any claim that the Government has not complied with this agreement. Otherwise, such claims shall be deemed waived (that is, deliberately not raised despite awareness that the claim could be raised), cannot later be made to any court, and if later made to a court, shall constitute a breach of this agreement.

Defendant breaches this agreement if defendant violates or fails to perform any obligation under this agreement. The following are non-exhaustive examples of acts constituting a breach:

A.  Failing to plead guilty pursuant to this agreement;

B.  Failing to fully accept responsibility as established in Section X, paragraph B, above;

C.  Failing to appear in court;

D.  Attempting to withdraw the plea;

E.  Failing to abide by any court order related to this case;

F.  Appealing (which occurs if a notice of appeal is filed) or collaterally attacking the conviction or sentence in violation of Section XI of this plea agreement; or

G.  Engaging in additional criminal conduct from the time of arrest until the time of sentencing.

If Defendant breaches this plea agreement, Defendant will not be able to enforce any provisions, and the Government will be relieved of all its obligations under this plea agreement. For example, the Government may proceed to sentencing but recommend a different sentence than what it agreed to recommend above. Or the Government may pursue any charges including those that were dismissed, promised to be dismissed, or not filed as a result of this agreement (Defendant agrees that any

statute of limitations relating to such charges is tolled indefinitely as of the date all parties have signed this agreement; Defendant also waives any double jeopardy defense to such charges). In addition, the Government may move to set aside defendant's guilty plea. Defendant may not withdraw the guilty plea based on the Government's pursuit of remedies for Defendant's breach.

Additionally, if Defendant breaches this plea agreement: (i) any statements made by Defendant, under oath, at the guilty plea hearing (before either a Magistrate Judge or a District Judge); (ii) the factual basis statement in Section II.B in this agreement; and (iii) any evidence derived from such statements, are admissible against defendant in any prosecution of, or any action against, defendant. This includes the prosecution of the charge(s) that is the subject of this plea agreement or any charge(s) that the prosecution agreed to dismiss or not file as part of this agreement, but later pursues because of a breach by the Defendant. Additionally, Defendant knowingly, voluntarily, and intelligently waives any argument that the statements and any evidence derived from the statements should be suppressed, cannot be used by the Government, or are inadmissible under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, and any other federal rule.

## XIII

### CONTENTS AND MODIFICATION OF AGREEMENT

This plea agreement embodies the entire agreement between the parties and supersedes any other agreement, written or oral. No modification of this plea agreement shall be effective unless in writing signed by all parties.

## XIV

**DEFENDANT AND COUNSEL FULLY UNDERSTAND AGREEMENT**

By signing this agreement, defendant certifies that defendant has read it (or that it has been read to defendant in defendant's native language). Defendant has discussed the terms of this agreement with defense counsel and fully understands its meaning and effect.

## XV

**DEFENDANT SATISFIED WITH COUNSEL**

Defendant has consulted with counsel and is satisfied with counsel's representation. This is defendant's independent opinion, and defendant's counsel did not advise defendant about what to say in this regard.

Respectfully submitted,

RANDY S. GROSSMAN
United States Attorney

August 22, 2022
DATED

MICHAEL A. DESHONG
ROBERT J. MILLER
Assistant U.S. Attorney

9/5/2022
DATED

ANDREW K. NIETOR
Defense Counsel

**IN ADDITION TO THE FOREGOING PROVISIONS TO WHICH I AGREE, I SWEAR UNDER PENALTY OF PERJURY THAT THE FACTS IN THE "FACTUAL BASIS" PARAGRAPH ABOVE ARE TRUE.**

9/5/2022
DATED

ROBERTO SALAZAR II
Defendant

19

Def. Initials RS
Case No. 22-cr-216-JLS-1